IN RE APPLICATION OF SINGH.

**[Cite as *In re Application of Singh*, 101 Ohio St.3d 8, 2003-Ohio-6622.]**

*Attorneys at law — Application to take Ohio Bar Examination denied when applicant fails to show by clear and convincing evidence that he possesses the character and fitness required for admission to practice law in Ohio — Applicant has deficiencies in speaking and writing English — Applicant may file application to take bar examination eighteen months from date of Supreme Court's decision.*

(No. 2003-1039 — Submitted August 26, 2003 — Decided December 31, 2003.)

On Report of the Board of Commissioners on Character and Fitness of the Supreme Court, No. 239.

_____

**Per Curiam.**

{¶1}   Applicant, Satnam Singh of Greenfield, Wisconsin, filed an application to take the February 2002 Ohio bar examination.  On November 1, 2002, a panel of the Board of Commissioners on Character and Fitness of the Supreme Court held a hearing on the application.  Applicant testified in his own behalf and was questioned by the panel.  No other witnesses appeared.  The hearing record and exhibits before us disclose the following facts.

{¶2}   Applicant was born and educated in India.  After earning a law degree there, applicant was admitted to practice law in the Indian states of Punjab and Haryana in 1986.  Applicant practiced law in India until coming to the United States in 1989.

{¶3}   On February 9, 1998, applicant filed an application to register as a candidate for admission to the practice of law in Ohio.  As part of his application,

applicant completed the character questionnaire prescribed by the Board of Commissioners on Character and Fitness pursuant to Gov.Bar R. I(2)(B)(6).

{¶4} On January 12, 1999, applicant was interviewed by two members of the Admissions Committee of relator, the Toledo Bar Association. The interviewers concluded that they could not approve applicant without further information concerning applicant's education and employment history and what they believed to be a misdemeanor charge against him. The interviewers also questioned whether applicant's command of the English language was adequate, inasmuch as applicant did not appear to fully understand questions put to him.

{¶5} On March 29, 1999, applicant filed an application to take the July 1999 bar examination, along with the supplemental character questionnaire required by Gov.Bar R. I(3)(B)(4). Because applicant's character and fitness were not approved in time, applicant was denied permission to take the July 1999 examination.

{¶6} On August 22, 2001, applicant filed an application to take the February 2002 bar examination. On October 23, 2001, applicant was interviewed by two different members of relator's Admissions Committee.

{¶7} Both interviewers recommended against accepting applicant for admission to the practice of law. Neither questioned applicant's character or moral qualifications. However, both questioned whether applicant's English was good enough to enable him to practice law competently in Ohio.

{¶8} Despite the unfavorable recommendations of the interviewers, relator's Admissions Committee approved applicant. The committee chairman explained that the interviewers had expressed no concerns about applicant's honesty or character. In the chairman's opinion, the concerns that the interviewers had raised about applicant's English skills were "not relevant to the mandate of the committee."

{¶9} Subsequently, the board invoked sua sponte its investigative authority to conduct a hearing into applicant's character, fitness, and moral qualifications to practice law. See Gov.Bar R. I(10)(B)(2)(e). Applicant was denied permission to take the February 2002 examination because the investigation was not completed in time. As noted above, the hearing was held on November 1, 2002.

{¶10} At the hearing, the panel was particularly concerned with applicant's failure to disclose that he had once applied for a license to practice law in California and his failure to disclose details of a lawsuit against him.[1]

The 1992 California Bar Examination

{¶11} In July 1992, applicant took the California bar examination. He failed it.

{¶12} Question 12(b) on the character questionnaire asks: "Have you ever held or applied for a license or certificate, including but not limited to any license or certificate to practice law in any jurisdiction, the procurement of which required proof of good character?" In his 1998 application to register, applicant checked "Yes." Question 12(b) further asks the applicant to provide details "as to *each* license or certificate," including "whether the license or certificate has been *refused* or revoked." (Emphasis added.) In responding to this part of the question, applicant mentioned only his 1986 license to practice law in Punjab. He did not disclose that he had been refused a license to practice law in California.

{¶13} Question 7(a) on the supplemental character questionnaire asks: "Since registering as a candidate for admission to the practice of law, have you

---

1. The panel and board also expressed concern about applicant's failure to disclose an arrest. On Question 13(a)(2) of the character questionnaire, an applicant is asked to disclose "whether you have ever been, or presently are, a party to or otherwise involved (except as a witness) in * * * any criminal or quasi-criminal *action or legal proceeding*." (Emphasis added.) Although applicant was once arrested, applicant stated to the panel that no charge was filed against him. There is nothing in the record to contradict applicant's assertion. Hence, no "criminal or quasi-criminal *action or legal proceeding*" resulted from applicant's arrest.

held or applied for a license or certificate, including but not limited to any license or certificate to practice law in any jurisdiction, the procurement of which required proof of good character?" Questions 7(b)(i)-(vi) again ask for details "as to each license or certificate." On his 1999 application for examination, applicant answered Question 7(a) "Yes." On Question 7(b), he again mentioned his attorney's license in Punjab—and again failed to disclose that he had applied for a California license.

{¶14} On his 2001 application, applicant finally disclosed that he had applied for a California license. However, he responded inaccurately to Question 7(b)(iii) on the questionnaire by giving July 1992 as the date on which he had been *granted* a California license.

{¶15} At the hearing, applicant admitted that he was not a member of the California bar and that he had failed the July 1992 California bar examination. Applicant blamed his inaccurate response to Question 7(b)(iii) on a legal secretary who had typed the application for him. However, he conceded that he had failed to review that page of the application before signing it.

{¶16} Applicant also responded inaccurately to Question 7(b)(v) on his 2001 application by stating that a California license had not been "refused or revoked." At the hearing, applicant explained that he had not interpreted the words "refused or revoked" in Question 7(b)(v) as encompassing denial of an application for failure to pass the bar examination.

The Wisconsin Traffic Accident Lawsuit

{¶17} In 1991, applicant was involved in a two-car accident in Wisconsin. The occupants of the other vehicle sued applicant in the Wisconsin courts and obtained a judgment against him in the amount of $14,463. According to applicant, he never received notice of the lawsuit against him. When applicant learned that a judgment had been entered against him, he consulted an attorney, who advised him to file a bankruptcy petition. Applicant ultimately received a

discharge in bankruptcy. However, he took no steps to vacate the judgment against him for lack of service.

{¶18} Question 13(a)(1) on the character questionnaire asks an applicant to "[s]tate whether you have ever been, or presently are, a party to or otherwise involved (except as a witness) in * * * any civil or administrative action or legal proceeding." On his 1998 application, applicant answered this question "No."

{¶19} On Question 14(a) of his 1998 application, applicant disclosed that he had filed a bankruptcy petition. He added the following note: "In the amount of $14,000.00 due to car accident."

{¶20} An applicant who answers "yes" to any part of Question 14 is instructed to "explain the facts in detail" on a separate sheet, including specific information about any court proceedings. Applicant did not follow this instruction. However, in response to a subsequent query from the National Conference of Bar Examiners ("NCBE"), applicant submitted a letter and documents regarding the bankruptcy and automobile accident. Applicant's letter mentioned the existence of a judgment against him, although he did not provide the specific information called for on the questionnaire.

{¶21} At the hearing, applicant appeared to have trouble understanding the difference between having the judgment against him vacated and having the judgment debt discharged in bankruptcy:

{¶22} "MR. MICHELSON [panel member]: * * * [O]nce you understood there was a judgment, did you take any steps to go back and vacate that judgment because you did not have notice?

{¶23} "MR. SINGH: Yes, I did. When I found there was a judgement [sic] decided against me then I went to attorney and then I told him this thing was going on.

{¶24} "* * *

**{¶25}** "Then he told me we have one way, to file bankruptcy and to show these documents to the judge.

**{¶26}** "MR. MICHELSON: So your attorney's advice was not to try and vacate the judgement [sic], but to just file bankruptcy?

**{¶27}** "MR. SINGH: Yes, sir.

**{¶28}** "MR. MICHELSON: And you did that?

**{¶29}** "MR. SINGH: Yes, sir.

**{¶30}** "MR. MICHELSON: Was it at the bankruptcy hearing that the bankruptcy judge discharged the debts and that was the end of it?

**{¶31}** "MR. SINGH: Yes, sir.

**{¶32}** "* * *

**{¶33}** "MR. MICHELSON: Nobody ever vacated the judgment, correct?

**{¶34}** "MR. SINGH: Yes.

**{¶35}** "* * *

**{¶36}** "MR. DOLAN [panel chairman]: Do you know what he means when he says, vacate the judgment?

**{¶37}** "MR. SINGH: Actually, dismissed the judgment that you need not to pay.

**{¶38}** "MR. MICHELSON: That sounds like a discharge in bankruptcy.

**{¶39}** "MR. SINGH: Yes, sir.

**{¶40}** "MR. MICHELSON: Is that what you understand to have happened?

**{¶41}** "MR. SINGH: Yes.

**{¶42}** "* * *

**{¶43}** "MR. MICHELSON: But do you know what I mean when I say, vacate judgment?

**{¶44}** "MR. SINGH: What do you mean?

**{¶45}** "MR. MICHELSON: It means vitiate judgement, eliminate it, make it no judgment. In other words, make the judgement as if it never happened.

**{¶46}** "MR. SINGH: He said only you need not pay any debts.

**{¶47}** "MR. MICHELSON: So you never took any steps to vacate the judgment, just discharge the debts?

**{¶48}** "MR. SINGH: No, I did not."

**{¶49}** Applicant also seemed to think that by granting him a discharge, the bankruptcy judge had ruled on the merits of the state-court lawsuit:

**{¶50}** "They [the plaintiffs] asked to pay this judgment for medical. They put fake medical, there were only two people traveling in the car and they put medical, four people medical in the accident. So I show the police that I brought in to the Judge when I filed the bankruptcy, this thing is going on and it's totally bogus medical, so he decided on white paper that it's okay to not pay people because they totally making up.

**{¶51}** " * * * [H]e decided on my favor that this medical is totally fake * * *.

**{¶52}** " * * * I think, I don't know, I believe the judgement and bankruptcy that Judge decides in my favor that this is totally bogus."

**{¶53}** In his letter to the NCBE, applicant stated that he was a student at the time of the traffic accident. However, his questionnaires did not reflect that he was enrolled in any school in 1991. In fact, they did not indicate how applicant was occupied between 1989, when he arrived in the United States, and 1995, when he became a schoolteacher in Milwaukee. At the hearing, applicant stated that his parents had supported him during that period.

**{¶54}** The panel concluded that applicant had failed to prove his fitness to practice law. "In particular, the Panel found that the Applicant did not have the ability to communicate clearly with clients, attorneys, courts and others." This conclusion was based on applicant's difficulty understanding the questions on the

application and the questions put to him at the hearing. In addition, the panel found, applicant's answers at the hearing "were often vague and not responsive," and he appeared to lack clear understanding of the purpose of the hearing, the issues, and his burden of proof.

{¶55} Although the panel found that the applicant failed to satisfy his burden of demonstrating his fitness to practice law, the panel believed that applicant might be able to satisfy the fitness standard in the future. The panel therefore recommended that applicant be allowed to reapply to take the bar examination after 18 months, provided that he "fulfills the requirements of the application from the beginning." The full board adopted the panel's findings and recommendations, including the requirement that applicant wait for 18 months before reapplying to take the bar examination.

{¶56} We adopt the findings and conclusions of the board. Applicant was required to prove his fitness, as well as his character, by clear and convincing evidence. In our judgment, he has not met that standard.

{¶57} The board was correct to distinguish the concept of fitness from that of character. Our precedents teach that the concept of fitness to practice law is not limited to the applicant's moral fitness. Compare *In re Application of Mort* (1990), 53 Ohio St.3d 260, 560 N.E.2d 204 (applicant's mental health considered as affecting fitness to practice law); *In re Application of Bower* (1992), 65 Ohio St.3d 429, 605 N.E.2d 6 (same).

{¶58} In light of this applicant's deficiencies in speaking and writing English and in comprehending the speech and writing of others, we share the board's doubts about his fitness to practice law. Communication skills are central to the practice of law. The questionnaires submitted by applicant show that he had difficulty understanding and following instructions written in English. The hearing transcript shows that he had equal difficulty understanding questions put to him orally in that language. Applicant's confusion regarding the bankruptcy

proceedings illustrates how his imperfect command of English could handicap him in practicing law, to the possible detriment of his clients. Moreover, his problems with understanding what he reads and hears are matched by his problems in communicating his own thoughts to others.

{¶59} Accordingly, we deny applicant permission to take the Ohio bar examination at the present time. In time, however, applicant's education and intelligence may enable him to overcome the language barrier that now stands in his way. Therefore, applicant may file a new application to take the bar examination; however, he may not file his application until 18 months have elapsed from the date of this decision.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

_____

Satnam Singh, pro se.

Spiros Cocoves, for Toledo Bar Association.

_____